Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 50194 | **DATE** | 7/24/2001 |
| **CASE TITLE** | NICHOLS vs. UNISON INDUSTRIES, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, Nichols' motion to strike is granted in part and denied in part. Unison's Rule 56 motion for summary judgment is granted. This cause is hereby dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JUL 26 2001 | 40 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| /SEC | courtroom deputy's initials | 2001 JUL 26 AM 11:23 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

**DOCKETED**
**JUL 26 2001**

Glenford J. Nichols

v.

Unison Industries, Inc.

**JUDGMENT IN A CIVIL CASE**

Case Number: 99 C 50194

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Nichols' motion to strike is granted in part and denied in part. Unison's Rule 56 motion for summary judgment is granted. This cause is hereby dismissed in its entirety.

FILED-WD
2001 JUL 26 AM 11:24
CLERK
U.S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Date: 7/26/2001

_Susan M. Wessman_
Susan M. Wessman, Deputy Clerk

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

GLENFORD J. NICHOLS,                )
                                    )  No. 99 C 50194
        Plaintiff,                  )
                                    )
    v.                              )
                                    )
UNISON INDUSTRIES, INC.,            )
                                    )
        Defendant.                  )

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Plaintiff Glenford Nichols has filed an amended four-count complaint against Unison Industries, Inc. ("Unison"), alleging claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Specifically, Nichols has labeled his claims as follows: age discrimination/disparate treatment (Count I); age discrimination/wrongful discharge (Count II); discrimination under the ADA/failure to provide a reasonable accommodation (Count III); and, discrimination under the ADA/wrongful discharge (Count IV). Currently pending is Unison's motion for summary judgment, filed pursuant to Fed.R.Civ.P. 56, and Nichols' motion to strike. The court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is proper as the complained of events occurred in this district and division. See id. § 1391.

### II. Facts

Unison manufactures electrical components for airplanes and owns plants in Jacksonville, Florida and Rockford, Illinois.

(LR56.1(a) ¶ 1) Nichols worked at Unison's Rockford plant as a welder from September 1994 until his discharge on May 21, 1998. Initially, his job title was "welder B," the lower paying of two classifications for welders, and the senior welder was Tom Mora. (Id. ¶¶ 3-4) As a welder B, Nichols had to do the lower-skilled duties, such as fabricating, grinding, and polishing. (Id. ¶ 5) Mora was subsequently demoted and on April 1, 1996, Nichols became the senior welder in the department. (Id. ¶ 17)

Shortly before that, on March 18, 1996, a coworker, Carol Dunn, complained to Nichols' supervisor, Ted Smith ("T. Smith"), that Nichols frequently waited for her in the company parking lot before work and on one occasion grabbed her shirt sleeve. (Id. ¶ 14) Nichols denied engaging in such conduct, but T. Smith told him to act more professionally in the future. (Id.) On June 7, 1996, Dunn again complained to T. Smith about Nichols, stating Nichols told her his health was deteriorating because of her. (Id. ¶ 18) Nichols denied saying that to Dunn; nevertheless, T. Smith told both to act more professionally toward one another. (Id.)

As a result of these complaints, in a performance appraisal dated July 30, 1996, T. Smith rated Nichols as "needs improvement" in the category of teamwork and wrote, "need to spend more time in weld booth vs. wandering" and "need to eliminate interpersonal conflicts with other employees." (Id. ¶¶ 19-20; T. Smith Aff., Exh. 3) In all other categories, T. Smith rated Nichols as "outstanding," "commendable," or "acceptable."

2

(T. Smith Aff., Exh. 3) A year later, in Nichols' performance appraisal dated July 31, 1997, T. Smith similarly criticized Nichols. Specifically, T. Smith rated Nichols as "marginally acceptable" in the category of teamwork, writing that Nichols "distracts others by visiting and wandering," and "use of time needs to improve. Too much time spend [sic] out of the weld booth. Disruptive to employees trying to [perform] their job." (LR56.1(a) ¶ 28; T. Smith Aff., Exh. 4)

In June 1997, Nichols took a leave of absence because of a heart condition. (LR56.1(a) ¶ 21) During his absence, the company hired Lorri Weiskopf as a welder B. (Id.) During all relevant times, her expertise and hourly rate were lower than Nichols'. When he returned to work in August 1997, Nichols asked Production Manager Marty Boyer if he could take five-minute breaks every hour because he had a heart condition that required him to seek occasional relief from the heat of the welding booth. (LR56.1(a) ¶ 25) Boyer said fine, and told Nichols he did not need to bring in a doctor's note. (Id. ¶¶ 25-26) Boyer told T. Smith about Nichols' need to take short, hourly breaks. (Id. ¶ 27)

However, T. Smith observed Nichols walk around the plant talking to coworkers while on his breaks, disrupting and distracting them. (Id. ¶ 28) (This is what led to the comments in Nichols' 1997 performance appraisal.) When T. Smith saw this happening, he told Nichols to return to work. In August 1997, Nichols complained to Boyer that T. Smith was interrupting his

3

breaks and telling him to get back to work. (Id. ¶ 32) Nothing was done, and again in March 1998 Nichols complained to Boyer about T. Smith interrupting his breaks. (Id.)

It is clear from the record that Nichols and Weiskopf did not get along. According to Nichols, Weiskopf did less welding work than him, got the easier jobs, and spent much of her time in an air-conditioned inspection room. (LR56.1(b) ¶ 116) On April 28, 1998, he complained to T. Smith and Boyer that welding jobs were not being distributed fairly. (LR56.1(a) ¶ 34) Almost immediately after he left the meeting, Weiskopf burst into the meeting, visibly upset and crying, and said she wanted to tell "her side of the story." (Id. ¶ 35) Weiskopf told T. Smith and Boyer that other coworkers told her Nichols had referred to her as a useless and crappy welder, a "kissass," a "lazy fat ass," made derogatory references to her body, and teased male coworkers that they were her "boyfriend" because they talked to her. (Id. ¶ 36) She also said he would not help her in the sheet metal department and would keep tools from her that she needed. (Id.)

When the company investigated Weiskopf's complaints, the coworkers she identified as having heard the derogatory remarks confirmed what Weiskopf said. (Id. ¶ 38) During its investigation, the company did not confront Nichols about Weiskopf's complaints. The company gave Nichols a final written warning on April 30, 1998, stating that he had created a hostile working environment which was not in keeping with the company's team environment. (Id. ¶ 39; Nichols dep. Exh. 3, Bates No.

000018) The written warning also stated termination would be the next step if Nichols' conduct did not improve. (LR56.1(a) ¶ 39)

On May 11, 1998, Nichols complained that a coworker, Brian Smith ("B. Smith"), made a statement which apparently implied Nichols was having an affair with a female coworker. (Id. ¶ 40) B. Smith admitted making the statement, but said that Nichols had made a similar statement to him. (Id. ¶ 41) The company gave B. Smith a verbal warning for his inappropriate remark but did not discipline Nichols. (Id. ¶¶ 43-44) On May 15, 1998 and again on May 19, 1998, B. Smith reported to management that Nichols was calling Weiskopf profane names. (Id. ¶¶ 45-46) T. Smith talked to another coworker, who confirmed that Nichols had called Weiskopf a "lazy fat ass." (Id. ¶ 47) On May 20, 1998, T. Smith told one of his superiors, Mike Meyers, that Nichols was still disparaging Weiskopf. (Id. ¶ 48) The next day, the company fired Nichols. (Id. ¶ 49) On that day, Nichols gave management a doctor's note, dated May 19, 1998, regarding his need to take an occasional break from the heat and welding. (Id.)

### III. Analysis

#### A. Nichols' Motion to Strike

Nichols has filed a motion to strike certain paragraphs of Unison's Local Rule 56.1(a) statement of facts. His motion to strike is granted in part and denied in part. For purposes of Unison's motion for summary judgment, Nichols' performance at, or reasons for his termination from, other companies before or after his employment at Unison is irrelevant. Unison had no knowledge

of his performance at the Taylor Company and such facts did not play into its reasons for discharging Nichols from Unison. The scant evidence about Nichols' working environment at BouMatic is insufficient to impact the analysis as to whether he was disabled within the meaning of the ADA while working at Unison. For these reasons, paragraphs 10 through 13 and 75 through 77 are stricken.

Likewise, Mora's belief that he was not transferred from the welder position because of his age is irrelevant at this stage. Mora was 47 at the time he was transferred. Paragraph sixteen is stricken.

Nichols is also correct that Unison improperly inserted legal argument in a footnote to paragraph 55, which is impermissible under the local rules. Footnote four of paragraph 55 is stricken. Paragraph 57 is also stricken, as it involves a credibility determination, which is impermissible at the summary judgment stage. Paragraph 59 is not stricken, although the court will ignore the word "relevant," the determination of which falls within the court's province. Paragraph 67 is not stricken, as Unison has accurately reproduced Nichols' testimony. Paragraph 73 is stricken as immaterial.[1]

---

[1] The court also notes Unison's responses to Nichols' responses in its LR56.1(a)(3)(B) reply (pages 1-12) were improper and were not considered. See White v. Sundstrand Corp., No. 98 C 50070, 2000 WL 713739, at *1 (N.D. Ill. May 23, 2000) (Reinhard, J.), aff'd, Nos. 00-2613, 00-4075, 01-1126, - F.3d -, 2001 WL 748046 (7th Cir. July 3, 2001).

## B. Unison's Motion for Summary Judgment

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 669 (7th Cir. 2000), cert. denied, 121 S. Ct. 1603 (2001). A genuine issue of fact exists only when a reasonable jury could find for the nonmoving party based on the record as a whole. Bekker, 229 F.3d at 669. The court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 120 S. Ct. 2097, 2110 (2000); EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 436 (7th Cir. 2000). However, a nonmoving party cannot survive summary judgment with merely a scintilla of evidence supporting its position. Sears, 233 F.3d at 437. A nonmoving party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion. Id.

### 1. Counts I and II - ADEA

In Count I, Nichols alleges he was subjected to different terms and conditions of employment because of his age. The court has been able to glean from Nichols' submissions that this claim is apparently based on two complaints: (1) other employees were

7

able to take more breaks than him; and, (2) Weiskopf received more favorable assignments than him. In Count II, Nichols alleges he was discharged because of his age. As Nichols has put forth no direct evidence of age discrimination, the court will evaluate his claims under the burden-shifting method set out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

Under this framework, Nichols bears the initial burden of making out a prima facie case of unlawful discrimination. <u>See</u> <u>Robin v. Epso Eng'g Corp.</u>, 200 F.3d 1081, 1090 (7th Cir. 2000). This requires him to show: (1) he is over forty; (2) he was performing his job to Unison's legitimate expectations; (3) he suffered an adverse employment action; and (4) Unison replaced him with someone who was substantially younger. <u>See id.</u>; <u>Johnson v. Zema Sys. Corp.</u>, 170 F.3d 734, 746 (7th Cir. 1999). If Nichols is able to establish a prima facie case, the burden shifts to Unison to articulate a legitimate, nondiscriminatory reason for the adverse employment action. <u>See Robin</u>, 200 F.3d at 1088. Once it has done so, Nichols has the opportunity to produce evidence from which a reasonable factfinder could conclude by a preponderance of the evidence that Unison's stated reason was not its true reason, but merely a pretext for discrimination. <u>See Reeves</u>, 120 S. Ct. at 2106; <u>Robin</u>, 200 F.3d at 1088.

With respect to Nichols' prima facie case, it is undisputed he is over forty (his date of birth is July 7, 1942, <u>see</u>

8

LR56.1(b) ¶ 160). It is also undisputed Nichols was performing to Unison's legitimate expectations as a welder. (Id. ¶ 86) While Nichols has satisfied the third prong as to his wrongful discharge claim, he has not satisfied this part of the prima facie case with respect to his claim based on the breaks. Not every unwelcome employment action qualifies as an adverse action; rather, it must cause a materially adverse change that is more disruptive than a mere inconvenience or an alteration of job responsibilities. Fyfe v. City of Fort Wayne, 241 F.3d 597, 602 (7th Cir. 2001).

Under Unison's procedures, employees were given two authorized breaks, one in the morning and one in the afternoon. (LR56.1(b) ¶ 136) Nichols was not deprived of these breaks. Rather, he claims he did not get as many "unauthorized" breaks as other employees. Unauthorized breaks were not part of Nichols' job title or job responsibilities, and could not be considered a normal and expected part of his job. Thus, the deprivation of such breaks does not constitute a material adverse action under the ADEA. See Rabinovitz v. Pena, 89 F.3d 482, 489 (7th Cir. 1996) (job restrictions, including that plaintiff could only talk to coworkers about business, had to report to supervisor when leaving and returning to office, and had to restrict breaks to twenty minutes, did not amount to adverse employment actions); cf. Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1116 (7th Cir. 2001) (denial of plaintiff's request for permanent wage reclassification was not a materially adverse action; wage

reclassification was purely discretionary and not a normal and expected part of plaintiff's employment); Hunt v. City of Markham, 219 F.3d 649, 654 (7th Cir. 2000) (denial of bonus not a material adverse action because bonuses generally are sporadic, irregular, unpredictable, and discretionary).

As for his ADEA claims based on his discharge and assignment of duties, Nichols has established the fourth prong. Regardless of whether Weiskopf or Charles Bell, a welder hired after Nichols' termination, is considered Nichols' replacement, both are substantially younger than Nichols. (LR56.1(a) ¶ 83; LR56.1(b) ¶ 96)

Unison's articulated reason for discharging Nichols is because of his continued disparagement and harassment of coworkers, in particular, of Weiskopf. (LR56.1(a) ¶¶ 48-49, 51) Nichols denies that he made negative comments about coworkers. This is irrelevant. The issue is whether he has produced evidence from which a reasonable factfinder could conclude the company is lying about its stated reason, or that its belief as to who was doing the name-calling was not honestly held. Nichols has produced no evidence tending to show this. On the contrary, the evidence produced supports Unison's conclusion. Long before he was terminated, management repeatedly warned Nichols in his performance evaluations to stop wandering around and disrupting other employees. In his 1996 evaluation, T. Smith specifically mentioned Nichols' need to eliminate inter-personal conflicts with coworkers. From 1996 until his termination, three different

10

employees, Dunn, Weiskopf, and B. Smith, complained to management that Nichols was saying nasty things or behaving inappropriately. Other coworkers verified the complaints. (LR56.1(a) ¶¶ 38, 47)

Nichols argues B. Smith engaged in similar misconduct but was not terminated. It is true a plaintiff can establish pretext by offering evidence that other similarly situated employees were treated more favorably. Essex v. United Parcel Serv., Inc., 111 F.3d 1304, 1311 (7th Cir. 1997). The record shows B. Smith was not similarly situated to Nichols. On one occasion Nichols complained that B. Smith said something inappropriate to him. (Id. ¶ 40) When confronted, B. Smith admitted making the statement, for which he received a verbal warning. (Id. ¶ 43) Nichols has produced no evidence showing management had previously received complaints about B. Smith saying or doing anything inappropriate to a coworker. Just as B. Smith received a verbal warning based on the first complaint, so too Nichols received a verbal warning when Dunn initially complained about him. (LR56.1(a) ¶ 14)

Regarding the assignment of duties, Unison states tasks were assigned to Nichols or Weiskopf according to each welder's skills. Because Nichols was the more experienced and higher paid welder, he received the more difficult tasks, according to Unison. It claims this was the same approach used when Mora was the head welder and Nichols held the welder B position. Nichols disputes this, but his own testimony shows both he and Weiskopf performed lower-skilled jobs while in the welder B position.

11

(LR56.1(a) ¶¶ 5, 22) In short, Nichols has failed to produce evidence from which a reasonable factfinder could conclude that Unison's stated reason for his discharge or for the assignment of duties is pretextual.[2]

### 2. **Counts III and IV – ADA**

Under the ADA, two distinct categories of disability discrimination claims exist: failure to accommodate and disparate treatment. Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1032 (7th Cir. 1999). The court must first clarify the grounds for Count III, a failure to accommodate claim. Unison argues Nichols' failure to accommodate claim is not based on the denial of heat breaks but, rather, is based solely on a theory that the company discharged him because he requested the heat breaks as an accommodation. (Def. Reply, p. 7 n.3) Its argument misreads Nichols' first amended complaint. The complaint clearly states Count III, the failure to accommodate claim, is based on the denial of heat breaks. (Compl. ¶ 27) Thus, the court understands Nichols' failure to accommodate claim to be based on both the denial of heat breaks and the theory that he was discharged for requesting an accommodation. Count IV is a disparate treatment claim.

---

[2] Nichols also argues B. Smith continually harassed him by making comments about his age and disability. (Pl. Resp., p. 10) It is unclear how he views such evidence as relevant to any of his claims. B. Smith was a coworker, not a supervisor, and his comments are irrelevant to Nichols' ADA and ADEA claims.

### a. **Failure to Accommodate**

The ADA prohibits an employer from discriminating against a qualified individual with a disability because of the individual's disability. 42 U.S.C. § 12112(a). The statute defines "discriminate" to include not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee, unless the employer can show the accommodation would impose an undue hardship on its operations. Id. § 12112(b)(5)(A).

At the outset, the court must determine what elements Nichols must establish for purposes of his failure to accommodate claim. Relying on Foster, 168 F.3d at 1032, Unison argues Nichols must show: (1) he was or is disabled; (2) Unison was aware of the disability; (3) he was otherwise qualified for the job; (4) he suffered an adverse employment action; and, (5) the disability caused the adverse employment action. (Def. Memo., p. 2) While Unison correctly reiterates the Seventh Circuit's holding, the court finds Foster to be inapposite here. In Foster, an employee with carpal tunnel syndrome was suspended and ultimately discharged for failing to follow company procedures regarding her attendance. In suing the company, the employee claimed she was discharged because of her disability, not because of her failure to follow company procedures. Apparently, her failure to accommodate claim rested on the theory that, had the

13

company accommodated her disability, she would not have violated company procedures.

Here, on the other hand, Nichols is not claiming the company's failure to accommodate his disability rendered him somehow unable to perform his job. On the contrary, Nichols has asserted that he satisfactorily performed his welding duties at all times. Nichols' failure to accommodate claim rests solely on the principle that he requested a reasonable accommodation - hourly, five-minute breaks - and Unison failed to always grant his request. Under this scenario, Nichols must initially show: (1) he was disabled; (2) Unison was aware of his disability; and, (3) he was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position. See Basith v. Cook County, 241 F.3d 919, 927 (7th Cir. 2001). The court assumes, for purposes of Unison's motion for summary judgment, that Nichols has produced enough evidence in support of these three factors.

As for the first factor, Nichols testified he suffers from one hundred percent blockage on the right side of his heart, and fifty to sixty percent blockage on the left side. (LR56.1(b) ¶ 118) As a result of his heart condition, he is unable to walk a half-mile without discomfort, cannot lift heavy objects, and the heat causes him to get dizzy. (Id. ¶¶ 119-20) He has pain in his legs, which the medication he takes for chest pain does not alleviate. (Id. ¶ 121) Although neither party has produced evidence comparing Nichols' walking abilities with those of the

14

general population, this is enough from which a rational jury, viewing the evidence in the light most favorable to him, could conclude he was substantially limited in the major life activity of walking. See Sears, 233 F.3d at 438-39 (evidence showed questions of fact existed as to whether plaintiff was substantially limited in major life activity of walking, precluding summary judgment on that issue). Despite his cardiac problems, Nichols was able to perform the essential functions of the welder job, rendering him a qualified individual with a disability, within the meaning of the ADA, for purposes of Unison's motion.

Nichols has produced enough evidence to satisfy the second factor, that the company knew of Nichols' heart problems. (See LR56.1(b) ¶¶ 87-89, 141, 151) As for the third factor, as stated in the previous section, Nichols was satisfactorily performing his welding duties, showing he was qualified for the job. (Id. ¶ 86)

Nevertheless, the court finds Nichols' failure to accommodate claim fails for a different reason. The ADA does not require an employer to grant a reasonable accommodation every time. Rather, the ADA requires an employer to grant a request for a reasonable accommodation when the accommodation makes it possible for the disabled individual to: (1) perform the essential functions of the job in question; (2) pursue therapy or treatment for the disability; or (3) enjoy the privileges and benefits of employment equal to those enjoyed by non-disabled

employees. See Fedro v. Reno, 21 F.3d 1391, 1395-96 (7th Cir. 1994) (discussing employer's duty to grant a request for a reasonable accommodation under the Rehabilitation Act);[3] Buckingham v. United States, 998 F.2d 735, 740 (9th Cir. 1993); Majtan v. Pilling Weck, No. 99-718, 2000 WL 1386321, at *6-7 (E.D. Pa. Sept. 22, 2000); Harmer v. Virginia Elec. and Power Co., 831 F. Supp. 1300 (E.D. Va. 1993); see also Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264-65 (1st Cir. 1999) (in a failure to accommodate claim, part of plaintiff's prima facie case is to show the employer's failure to accommodate affected the terms, conditions, or privileges of plaintiff's job); Vande Zande v. State of Wis. Dep't of Admin., 44 F.3d 538, 542 (7th Cir. 1995) (to "accommodate" a disability is to make some change that will enable the disabled person to work; an unrelated, inefficacious change is not an accommodation within the meaning of the ADA).

Here, Nichols did not need the hourly, five-minute breaks to perform the essential functions of his job. Nichols is claiming there were times he was denied a break, yet it is uncontested he performed satisfactorily as a welder throughout his employment at Unison. Nichols did not need the breaks as part of any therapy or treatment for his cardiac condition, nor has he produced any

---

[3] The term "reasonable accommodation" in the ADA was borrowed from regulations issued by the Equal Employment Opportunity Commission ("EEOC") in implementation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq., and courts look to decisions interpreting the Rehabilitation Act in deciphering the ADA. Vande Zande v. State of Wis. Dep't of Admin., 44 F.3d 538, 542 (7th Cir. 1995).

evidence showing that the denial of a break resulted in harm to him. He also was not denied a benefit or privilege. As the court stated previously, the unauthorized breaks about which Nichols complains cannot be considered a "benefit" or "privilege" of employment at Unison.

### b. **Disparate Treatment**

To establish a claim of discrimination under the ADA, Nichols must initially establish: (1) he was disabled within the meaning of the ADA; (2) his work performance met Unison's legitimate expectations; (3) he was discharged; and, (4) the circumstances surrounding the adverse employment action indicate it is more likely than not that his disability was the reason for the action. See Spath v. Hayes Wheels Int'l - Ind., Inc., 211 F.3d 392, 396 (7th Cir. 2000). As previous sections show, Nichols has established the first three elements. However, he has not established the fourth element with regard to either his discharge or assignment of duties claim.

Regarding his discharge claim, Nichols states he was discharged on the same day he formally requested an accommodation for heat breaks. (LR56.1(b) ¶ 159) He argues he was discharged for requesting a reasonable accommodation, and states the close temporal connection gives rise to an inference of discrimination. However, the company knew of Nichols' request for such breaks due to his cardiac problems long before the day management decided to discharge him.

17

Even if the court were to find that Nichols has established a prima facie case of disability discrimination, his claim based on the work assignments and on his discharge fail for the same reasons that his ADEA claims failed. Unison has articulated legitimate, nondiscriminatory reason for these adverse employment actions, and Nichols has produced no evidence from which a reasonable factfinder could conclude Unison's stated reasons are pretextual.

### IV. Conclusion

For the reasons set forth above, Nichols' motion to strike is granted in part and denied in part. Unison's Rule 56 motion for summary judgment is granted. This cause is hereby dismissed in its entirety.

E N T E R :

*Philip G. Reinhard*

**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

DATED: July 24, 2001